IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OCEANOGRAFIA S.A. de C.V., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 10-0174-WS-B ) |
| MCDERMOTT GULF OPERATING COMPANY, INC., et al., | ) ) ) ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the defendants' motion to dismiss or, alternatively, for abstention. (Doc. 8). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 9, 19, 24), and the motion is ripe for resolution.[1] After carefully considering the foregoing, the Court concludes the motion is due to be denied.

**BACKGROUND**

The plaintiff ("OSA") is the owner of certain specialized diving equipment ("the Equipment") that was employed aboard a ship ("the Vessel") owned by defendant McDermott Gulf Operating Company, Inc. ("McDermott"). In August 2006, non-party Con-Dive, LLC ("Con-Dive") entered a charter party ("the Charter") for use of the Vessel with non-party Secunda Global International, Inc. ("Global"). Global later assigned or otherwise transferred its rights and obligations under the Charter to McDermott. Defendant Secunda Marine Services, Inc. ("Secunda") acted as manager of the Charter.

---

[1] OSA's motion for leave to file sur-reply, (Doc. 25), is **denied**.

[1]

The Charter expired in March 2009, with the Vessel laying in Mexican waters engaged in work for PEMEX. At this point, Con-Dive was some $5 million in arrears on charter hire. The defendants herein sailed the Vessel to Mobile, where in April they sought and obtained on the usual ex parte basis both attachment and arrest of the Equipment. OSA quickly moved to vacate both. The Court vacated the attachment as inequitable, based on evidence of the defendants' conduct vis-à-vis Mexican authorities in connection with the Vessel's departure. The Court vacated the arrest because the defendants lacked a maritime lien on the Equipment.

Meanwhile, in April 2009 the defendants herein filed suit in Nova Scotia against OSA and Con-Dive, among others, for unpaid charter hire and related damages. That suit continues, although its precise status is uncertain.

The defendants herein appealed the Court's order vacating arrest and attachment. In March 2010, the Eleventh Circuit affirmed. OSA filed this suit two weeks later. It asserts that the defendants' arrest and attachment of the Equipment "were committed maliciously and in bad faith and in reckless disregard of OSA's legal rights," and it claims the defendants "committed the torts of wrongful arrest, wrongful attachment and conversion." (Doc. 1 at 6).

The defendants assert that this action should be dismissed on the grounds of improper venue, because the Charter requires such claims to be maintained in Nova Scotia and because OSA is bound by this forum selection provision. The defendants assert in the alternative that the Court should abstain from hearing this case based on the pendency of their suit in Nova Scotia.

**DISCUSSION**

**I. Motion to Dismiss.**

"We hold that motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed.R.Civ.P. 12(b)(3) as motions to dismiss for improper venue." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998).

The Charter provides in pertinent part as follows:

> This Charter Party shall be governed and construed in accordance with the Laws of Nova Scotia and the Federal Laws of Canada applicable thereto with any disputes resolved in the Supreme Court of Nova Scotia or the Federal Court of Canada in Halifax, and both Charterers and Owners unconditionally agree to submit to the jurisdiction of these Courts.

(Doc. 9, Exhibit 1 at 9). The threshold question is whether this provision captures the claims asserted by OSA in this action.

The defendants focus on the phrase "any disputes," and especially on the absence of any subsequent limiting language. They maintain that such a clause must be read to include all claims "'arising directly or indirectly from the business relationship evidenced by the contract.'" (Doc. 9 at 4 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (en banc)). They would construe the clause as sweeping before it any dispute "aris[ing] out of the maritime venture initiated by" the Charter. (*Id.* at 5). But for the Charter, they argue, the Equipment would never have been on the Vessel, and thus OSA's claims for conversion and wrongful arrest/attachment of the Equipment arise out of the maritime venture and the business relationship initiated by the Charter. (*Id.*).

The Court agrees that the forum-selection provision contains no limiting language after the phrase, "any disputes." The relevant phrase, however, is actually "with any disputes," and it is not employed in a vacuum. Rather, it begins the second part of a single sentence and ties the two parts together, emphasizing that the disputes subject to the Nova Scotian resolution discussed in the second part of the sentence are those described in the first part of the sentence. The first part of the sentence is by its terms limited to the Charter, its governance and construction, so it is only disputes under the Charter that are subject to the forum-selection clause.

The defendants do not assert that OSA's claims are disputes under the Charter. They could not easily do so, since those claims do not challenge any conduct taken under the Charter or even any conduct occurring during the existence of the Charter.[2]

The cases cited with almost no discussion by the defendants do not support a different conclusion. The forum-selection clause in *Stewart* required a New York forum for "any case or controversy arising under or in connection with this Agreement," which the Court construed to reach "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." 810 F.2d at 1067, 1070. The forum-selection clause at issue here, in contrast, does not state that it reaches controversies "in connection with" the Charter, as would be required to render *Stewart* relevant.[3]

The only other binding case on which the defendants rely is *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). The forum-selection clause in that case extended to "all claims arising," which was not connected to any other contract language, *id*. at 2, and which thus might support a broader reading. In addition, the dispute involved one party's performance under the contract, *id*. at 3, 13, and the Court did not address whether, or suggest that, the provision would control a dispute arising after the contract ended and not involving conduct under the contract.

The arbitration clause at issue in *Caribbean Steamship Co. v. Sonmez Denizcilik ve Ticaret A.S.*, 598 F.2d 1264 (2nd Cir. 1979), *Miletic v. Holm & Wonsild*, 294 F. Supp.

---

[2] The defendants do not argue that the Charter gave them the right to have the Equipment arrested, attached or otherwise taken from OSA.

[3] The defendants incorrectly describe *Stewart* as involving a forum-selection clause extending to "any … case or controversy," and they omit the critical "in connection with" language. (Doc. 9 at 4).

It should be noted that the claims asserted in *Stewart* were for breach of contract, breach of warranty, fraud and antitrust, 810 F.2d at 1070, all of which apparently arose during the course of the contractual relationship. *Stewart* thus does not hold that claims, such as OSA's, which arise only after the contractual relationship has ended and which do not challenge conduct occurring during that relationship, nevertheless arise "from the business relationship evidenced by the contract."

772 (S.D.N.Y. 1968), and *Warth Line, Ltd. v. Merinda Marine Co.*, 778 F. Supp. 158 (W.D.N.Y. 1991), stated generally that, "[s]hould any dispute arise between Owners and Charterers," it would be referred to arbitration. Unlike the provision in this case, the "any dispute" language stood in its own, untethered paragraph and thus could be viewed as unrestricted.

The forum-selection provision in *Pods, Inc. v. Paysource, Inc.*, 2006 WL 1382099 (M.D. Fla. 2006), is the most similar to the one at issue here. It provided that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Ohio and the venue of any lawsuit will be the County of Montgomery, Ohio." *Id*. at *1. The Court determined that, absent explicit limiting language, "any lawsuit" should be given a broad construction. *Id*. at 2 n.1. As discussed above, the structure and language of the instant forum-selection clause persuades the Court that the clause is facially limited to the Charter, and the *Pods* opinion offers no compelling analysis to the contrary.

Perhaps other or more refined arguments could be made which would reveal that the instant forum-selection provision is broader than it appears. The Court's consideration, however, is limited to the defendants' presentation, which is now exhausted. The forum-selection provision applies only to claims under the Charter, and OSA's claims are not claims under the Charter but independent of it. The motion to dismiss for improper venue is due to be denied.

### II. Motion to Abstain.

In the alternative, the defendants ask the Court to abstain from exercising jurisdiction over OSA's claims under the doctrine of lis alibi pendens. (Doc. 8 at 2). "Lis alibi pendens is a doctrine rooted in international comity which permits a court to refuse to exercise jurisdiction in the face of parallel litigation that is ongoing in another country." *Seguros del Estado, S.A. v. Scientific Games, Inc.*, 262 F.3d 11643,1169 (11th Cir. 2001). "The application of lis alibi pendens turns on whether a court should exercise its jurisdiction where *parallel* proceedings are ongoing in a foreign nation …." *Id*.

(emphasis in original, internal quotes omitted). "The threshold question, therefore, is whether this case is parallel to the ongoing case in [Nova Scotia]." *Id*. at 1170.

The defendants assert that each of OSA's claims requires proof of bad faith.[4] The Nova Scotia action will determine whether OSA is bound by the Charter and whether it breached the Charter. If that Court determines that OSA is obligated to pay charter hire, the Charter provides for a lien on the Equipment. (Doc. 9, Exhibit 1 at 7). The defendants argue they should not be found guilty of bad faith in this action if they prevail in the Nova Scotia action, because the existence of a lien is inconsistent with bad faith. "Therefore, the key issue in Nova Scotia [whether OSA breached the Charter] will also be central to the litigation in Mobile." (Doc. 9 at 14).

The defendants' argument founders on the proposition that the existence of a contractual lien under the Charter would insulate them from liability in this case. The bad faith alleged in the complaint is that the defendants directed the Vessel to depart Mexican waters in defiance of a Mexican governmental order seizing the Equipment; failed to declare the Equipment to Mexican customs authorities; obtained attachment and arrest in this District without disclosing to the Court the Mexican seizure order; and represented to the Court, in order to obtain arrest, that they had a maritime lien on the Equipment when they lacked any legal basis for so maintaining. (Doc. 1 at 3-5). The mere existence of a contractual lien on the Equipment would not demonstrate the defendants' good faith in (as OSA alleges) flouting Mexican law and making

---

[4] *See Furness Withy (Chartering), Inc. v. World Energy Systems Associates*, 854 F.2d 410, 411 (11th Cir. 1988) ("It is an established principle of maritime law that one who suffers a wrongful attachment may recover damages from the party who obtained the attachment, provided he prove that such party acted in bad faith."); *id*. at 412 ("In our view, maritime precedent has answered, albeit implicitly, the question of what a claimant must prove to recover for a conversion caused by an improper attachment. The claimant must prove bad faith by the party who obtained the attachment.").

misrepresentations and omissions in this Court in order to obtain attachment and arrest.[5] The defendants offer no explanation of their ipse dixit that, if the Equipment is subject to a lien, they "should not be found to have acted in 'bad faith' in seizing" it, (Doc. 9 at 14), and the Court will not seek or create an explanation on their behalf.

Two actions that "involve materially different issues" are not parallel for purposes of lis alibi pendens analysis. *Seguros*, 262 F.3d at 1170. For instance, a domestic case "precipitated" by conduct at issue in a foreign case is not parallel to the foreign case if it "does not directly involve" that issue. *Id*. Nor are the cases parallel when the result of the domestic case "will not affect the outcome of" the foreign action. *Id*. As discussed above, this case does not directly involve the issue whether OSA breached the Charter, and a determination in this case that the defendants wrongly attached and arrested the Equipment and/or converted it cannot affect the determination in the Nova Scotia case whether OSA breached the Charter.

Because the two actions are not parallel, the doctrine of lis alibi pendens does not apply. The motion to abstain is due to be denied.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss or, alternatively, for abstention is **denied**.

DONE and ORDERED this 11th day of February, 2011.

                                       s/ WILLIAM H. STEELE
                                       CHIEF UNITED STATES DISTRICT JUDGE

---

[5] A maritime lien is a specialized creature, and the mere existence of a contractual lien does not establish a maritime lien. As the Court noted in the previous litigation, the Canadian law under which the defendants are traveling does not recognize maritime liens arising from breach of a charter party or from agreement of the parties.